HAROLD B. ANDREWS *vs.* EDWARD M. SULLIVAN *et al.*,

RICHARD W. JENNINGS *et al. vs.* EDWARD M.
SULLIVAN *et al.*

DECEMBER 30, 1913 (as of November 3, 1913.)

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Constitutional Law.*

In construing statutes in connection with some provision of the constitution it devolves upon the court to bring its construction, if possible, within the terms of the constitution.

*(2)   Constitutional Law.   Elections.   Payment of Taxes.*

Cons. R. I. Art. VII of amendments, provides that no person shall be allowed to vote in the election of the city council of any city unless he shall, within the year next preceding have paid a tax assessed upon his property therein, valued at least at $134.

The statute requires that the payment of a personal property tax, to qualify a voter to vote for members of a city council must be made within twelve months of the date of election and before the sixth day preceding the same.

Gen. Laws, 1909, cap. 7, § 22, as amended by Pub. Laws, 1910, cap. 640, § 1, provides that no person claiming the right to vote upon the payment of a tax assessed against him upon property, for members of a city council, shall be admitted to vote unless upon the production of a certificate from the collector of taxes, town treasurer or town clerk, of the place in which he resides, that before the sixth day preceding the day of such voting he has paid such tax assessed against him for and within such year.

Upon petition filed under Gen. Laws, 1909, cap. 8, § 29-31, praying that names erased by a board of canvassers from a voting list might be restored thereto.

*Held,* that the word "assessed" in Art. VII of amendments referred to a tax which had come into existence through some lawfully defined method of ascertaining it, and that it was the payment rather than the assessment of the tax which furnished the basis in calculating the period of twelve months, and therefore petitioner who paid a tax on January 13, 1913, which had been assessed against him as of August 1, 1912, was entitled to vote at an election November 4, 1913.

*(3)   Elections.   Constitutional Law.*

Gen. Laws, 1909, cap. 7, § 22, as amended by Pub. Laws, 1910, cap. 640, § 1, provides that no person claiming the right to vote upon the payment of a tax assessed against him upon property, for members of a city council, shall be admitted to vote unless upon the production of a certificate that before the sixth day preceding the day of such voting he has paid such tax assessed against him therein for and within such year.

*Held,* that, although the language of the act might seem to fix the date of the assessment as the starting point in calculating the period of 12 months, such construction would impose upon a taxpayer a condition in excess of the constitutional provision—Cons. R. I. Art. VII of amendments.

*Held,* further, that considering the provisions of cap. 7, § 22, as amended, independent of any constitutional limitation, the words "assessed against him therein" may be reasonably said to refer to a tax the amount of which has been ascertained by competent municipal authority and the words "for and within such year" indicate that such tax must have been paid within the year and must relate to the year in which it is paid, so that a tax assessed against petitioner in 1912 and which was paid by him in 1913 was a tax for and within the year which had not expired on November 4, 1913, the date of the election at which he claimed the right to vote.

Opinion to the Governor, *in re* Personal Property Voters, 24 R. I. 630, *distinguished.*

PETITIONS under Gen. Laws, 1909, cap. 8, §§ 29-31. Relief granted.

VINCENT, J.   These petitions are brought under Sections 29, 30 and 31 of Chapter 8 of the Gen. Laws of 1909. The petitions are practically identical in phraseology, present the same questions for consideration and will be considered together. The respondents in each petition constitute the Board of Canvassers of the City of Cranston together with the clerk thereof. The petitioners claim that said Board of Canvassers being assembled on the 29th and 31st days of October, 1913, for the purpose of canvassing the rights and correcting the lists of the voters of said city preparatory to an election for mayor, councilmen and other officers to be held on November 4th, 1913, illegally and contrary to law, erased and removed the names of the petitioners from the list or lists containing the names of persons entitled to vote for councilmen upon the payment of a personal property tax, and they pray that said Board of Canvassers may be ordered to restore and again place their names upon said list or lists forthwith to the end that they may not be deprived of their right to vote for councilmen at the said coming election.

It further appears from the petitions, which were filed November 1, 1913, that an election for mayor, councilmen

and other city officers is to be held in the City of Cranston on November 4, 1913; that the petitioners are each male citizens of the United States of the age of twenty-one years who have had their residence and home in the State of Rhode Island for two years last past and in the City of Cranston for six months last past and that their names were registered in said City of Cranston on or before the last day of June, 1913, as required by law; that each of said petitioners paid a tax assessed upon his personal property within said city, valued at not less than one hundred and thirty-four dollars, within the year next preceding the date of said forthcoming election and before the sixth day prior thereto; that on September 2, 1913, being the Tuesday next after the first Monday in said month, the Board of Canvassers prepared lists of the voters of said city and caused the same to be posted in public places as required by law; that said lists so prepared and posted included the names of the petitioners among the names of those persons who were entitled to vote upon the payment of a personal property tax; that subsequently on October 29th and 31st the Board of Canvassers erased and removed the names of the petitioners from the lists embracing the names of those persons who were entitled to vote upon the payment of a personal property tax. The petitions further set forth that at the meeting or meetings of the Board of Canvassers on October 29th and 31st there was presented to said Board certificates of the City Treasurer of said city of Cranston setting forth that the petitioners had paid a tax assessed upon personal property valued at least at one hundred and thirty-four dollars and that such tax had been paid before the sixth day preceding the date of the coming election.

The petitions in continuation also set forth that the action of the Board of Canvassers will deprive them of their right to vote for councilmen at said election and that such action is illegal and contrary to law, concluding with a prayer for an order commanding the Board of Canvassers and its clerk to restore the names of the petitioners to the

lists of voters entitled to vote upon the payment of a tax assessed upon their personal property and for a citation, etc.

(1)     The facts set forth in these petitions are undisputed. There are also certain other undisputed facts which appeared at the hearing and which must be borne in mind when we come to discuss the merits of the petitioners' claims under the provision of the constitution and the statutes bearing upon the rights of personal property voters.   Referring for convenience to the case of the petitioner, Harold B. Andrews, we find that a personal property tax was assessed against him as of August 1, 1912.   It was made payable "on and between October 30, 1912, and January 15, 1913, both inclusive" and was actually paid January 13, 1913.

The next personal property tax in Cranston was assessed as of August 4, 1913, and was made payable "on and between October 25, 1913, and January 20, 1914, both inclusive." This last described tax has not been paid.

The statute requires that the payment of a personal property tax, in order to qualify the voter to cast his vote for members of the city council must be made within twelve months of the date of election and before the sixth day preceding the same.   The action of the Board of Canvassers, in erasing the names of the petitioners, was based upon the assumption that they had not paid any personal property tax assessed within twelve months, and such was their contention in defending their action before the court.

The respondents claimed that the twelve months must be computed from the date when the assessment was made,— August 1, 1912,—and not from the date of payment,—January 13, 1913.

If the twelve months began to run from the date of the assessment that period would have elapsed prior to the date of the election—November 4, 1913—and the action of the Board in erasing the names of the petitioners might have been justified.   But if the proper date to be considered was the date of payment, the twelve months would not have expired and the removal of the names would be illegal and contrary to law.

It may be here noted that if the right to vote for councilmen at the election on November 4, 1913, depended upon the payment of the personal property tax assessed on August 4, 1913, which was payable beginning on October 25, 1913, and ending on January 20, 1914, then there would be but three days, omitting Sunday, within which personal property taxes could be paid as a qualification for the election on November 4th, because by another provision of statute such payment must be made before the sixth day preceding the date of election.

The respondents contend that the period of twelve months must be reckoned from the date of the assessment, and therefore it was incumbent upon the personal property voters in Cranston in order to qualify themselves to vote for councilmen at the election to be holden on November 4th, to pay their taxes during the three week days beginning October 25th, notwithstanding the fact that such taxes had been made payable at any time from October 25, 1913, to January 20, 1914.

(2) With these contentions of the respondents we cannot agree. We think that it is the payment rather than the assessment of the taxes which must furnish the basis in calculating the period of twelve months. Article VII in amendment of the constitution of our State, adopted April, 1888, provides that "no person shall, at any time be allowed to vote in the election of the city council of any city, or upon any proposition to impose a tax or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein, valued at least at one hundred and thirty-four dollars." It is evident from this language that the framers of this article in amendment of our constitution had in mind as the enabling feature thereof the payment of the tax. The word "assessed" as there used, would seem to refer to or be descriptive of a tax which had come into existence through some lawfully defined method of ascertaining it.

The respondents seem to rely, in support of the position which they take in this regard, upon Sec. 22 of Chap. 7

of the Gen. Laws of 1909, as amended by Sec. 1 of· Chap.
640 of the Pub. Laws, passed at the August Session, 1910,—
see Pub. Laws, 1910, page 681—which section is as follows:

"Sec. 22.   No person who claims the right to vote upon
the payment of a tax or taxes assessed against him upon
property, for aldermen or common councilmen of any city
within this State, or upon any proposition to impose a tax
or for the expenditure of money in any town or city, shall
by the boards of canvassers be admitted to vote for said
officers or upon said propositions, unless upon the production
of a certificate from the collector of taxes, town treasurer,
or clerk of the town or city in which he resides, that before
the sixth day preceding the day of such voting he has paid
such tax assessed against him therein for and within such
year."

(3)     In construing statutes in connection with some provision
of the constitution it devolves upon the court to bring its
construction, if possible, within the terms of the latter.
While the language of the act of 1910 considered independ-
ently of constitutional provisions might seem to fix the date
of the assessment as the starting point in calculating the
period of twelve months, such a construction of this statute
would impose upon the taxpayer a condition in excess of
the constitutional provision.   The theory of all provisions,
both constitutional and statutory, is to limit a participation
in the election of officials charged with the expenditure of
money to those who shall have some interest therein through
the payment of taxes.   In other words, the privilege of voting
for such officers or for such purposes is only accorded to
those who have paid their tax.   The right to vote is based
upon the interest which the voter is supposed to acquire
through his contribution to the expenses of the State or
the municipality.

In the present case the petitioners have within twelve
months prior to November 4, 1913, paid the only personal
property tax that they were bound to pay during that
period.   They were in no sense delinquent taxpayers because

the time within which they were permitted to pay the tax assessed against them in August, 1913, had not expired. and would not expire until January 20, 1914. To be sure, there were three days, beginning October 25, 1913, excluding Sunday, within which the tax assessed in August, 1913, might have been paid; but the privilege had been given to these taxpayers to make payment at their own pleasure and convenience up to and including January 20, 1914, and until that date such taxes could not be said to be in arrears, nor could they earlier be collected by any legal process.

We are not unmindful of the opinion of this court regarding the rights of personal property voters rendered June 14, 1902, in compliance with the request of the Governor and reported in 24 R. I. 630. The question was, "What disposition should be made by a board of canvassers of the name of a personal property voter upon his ceasing to be assessed, who has not registered within the registration year in which his last assessment was in force?"

The court said: "We are of the opinion that the name of such a voter should be immediately stricken from the voting list upon the expiration of the period of twelve months from the date of the assessment of the last general town or city tax against him, whenever that may occur, since upon the expiration of such period he is not qualified to vote thereafter unless by virtue of a prior personal registration within the preceding registration year in like manner as is required of registry voters. We said *in re The Canvassers' Powers*, 17 R. I. 809, that the name of a personal property voter whose tax was due, but unpaid, should be transferred to the registry list for elections for members of the city council of any city, or upon propositions to impose a tax, or for the expenditure of money, but this presupposes that the voter is still assessed."

The precise question which we are now considering does not appear to us to have been presented to the court in 1902. Although the words "assessed" and "assessment" are made use of in the question and in the opinion, respectively, it

does not appear that the court was called upon to or did consider as to whether it was the assessment or the payment of the tax which furnished the basis for calculating the period of twelve months within which the right to vote remained intact. The court was considering the case of a voter who had ceased to be assessed because he had ceased to be the owner of personal property, and who had also failed to register. Taking the last sentence of the paragraph from the opinion above quoted where the court refers with approval to *in re The Canvassers' Powers*, 17 R. I. 809, it becomes evident that the court fully recognized that it was the tax which was "due but unpaid" which authorized the transfer of the voter's name from the personal property to the registry list. It seems to us that the court must have been considering a case in which the right of the voter to vote upon personal property had become extinguished through his failure to hold personal property, such failure being evidenced by the fact that he had ceased to be assessed therefor and where, presumably, it further appeared that the voter had lost the opportunity of qualifying himself for another election as a personal property voter.

In Sec. 22 of Chap. 7 of the Gen. Laws of 1909, as amended by Chap. 640 of the Pub. Laws of 1910, it is provided that no person who claims the right to vote upon the payment of a personal property tax shall be allowed to do so unless "before the sixth day preceding the day of such voting he has paid such tax assessed against him therein for and within such year." The respondents contend that the last words, "for and within such year" solves the question in their favor and that if the tax is not paid for the year within which the voter desires to vote the Board of Canvassers should remove his name from the list of personal property voters. We cannot take the respondents' view of this statute.

By Sec. 2 of Art. II of the Constitution of R. I. of 1842, the right of suffrage was given to every male citizen of the United States over the age of twenty-one years, under certain conditions and restrictions therein enumerated, until the

end of the year 1843, the section concluding as follows: "From and after that time, every such citizen who has had the residence herein required, and whose name shall be registered in the town where he resides, on or before the last day of December, the year next preceding the time of his voting, and who shall show by legal proof, that he has for and within the year next preceding the time he shall offer to vote, paid a tax or taxes, assessed against him in any town or city in this State, to the amount of one dollar, or that he has been enrolled in a military company in this State, been equipped and done duty therein according to law, and at least for one day during such year, shall have a right to vote in the election of all civil officers, and on all questions, in all legally organized town or ward meetings: *Provided,* that no person shall at any time be allowed to vote in the election of the city council of the city of Providence, or upon any proposition to impose a tax, or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein, valued at least at one hundred and thirty-four dollars."

The portion of said Section 2 as above quoted in which occur the words "that he has for and within the year next preceding the time he shall offer to vote paid a tax or taxes assessed against him in any town or city in this State," etc., is the portion to which we need to particularly refer.

This section of our constitution was superseded by Article VII, adopted April, 1888, such amendment being popularly known as the Bourn amendment. In this amendment the words "for and within the year next preceding" are not included. From the adoption of said amendment therefore the right of the voter to exercise the functions of a personal property taxpayer was made dependent upon his payment of a personal property tax within one year prior to the time when he should offer to vote, the statute adding the further provision that such tax must be paid before the sixth day preceding the day of voting, this added statutory provision

being designed to furnish necessary and proper facilities for carrying out and making effective the provision of the constitution which the General Assembly was empowered to do.

Taking into consideration the original clause of the constitution referred to and the later amendment thereof, in connection with said Sec. 22 of Chap. 7 of the Gen. Laws of 1909, as amended by Chap. 640 of the Pub. Laws of 1910, and eliminating, as we must, any assumption that the General Assembly intended or desired to pass a statute inconsistent with the said amendment to the constitution, it becomes reasonably apparent that the framers of said Section 22 with the intention of drawing that act in conformity with the constitution and to that end adopting to some extent the language thereof inadvertently followed the original provision of the constitution unaware of or overlooking the changes wrought by the amendment.

To take the view urged by the respondents would compel us to disregard and smother, what seems to us to be, the plain intent of the constitutional amendment, and to construe said Sec. 22 of Chap. 7 as not being at variance therewith.

If we take the provisions of said Sec. 22 of Chap. 7, as amended, etc., and consider them entirely independent of any constitutional limitation or authority, it is by no means clear that they would then justify the construction which the respondents claim should be given to them. The language of the statute is "that before the sixth day preceding the day of such voting he has paid such tax assessed against him therein for and within such year." The words "assessed against him therein" may be reasonably said to refer to a tax, the amount of which has been ascertained by competent municipal authority. The words "for and within such year" may easily be said to indicate that such tax must have been paid within the year and must relate to the year in which it is paid. Taxes are assessed with a view to the expenditure of the amount obtained therefrom, during the year succeeding the date of collection. From the tax

assessed on August 1, 1912, the municipal expenses would undoubtedly be liquidated and would continue to be liquidated until the tax assessed in August, 1913, had been collected. It therefore may be said that the tax which was assessed against these petitioners in 1912 and which was paid by them in 1913, was a tax for and within the year which had not expired on November 4, 1913, the date of the election at which they claim the right to vote.

We do not believe that it was the intention of the General Assembly to impose upon the personal property voters, as a condition precedent to their right to vote, the payment of a tax which had not yet become demandable or collectible and where the last previous tax had been paid within a period of twelve months.

We think that the petitioners are entitled to have their names put back upon the lists of personal property voters, and a decree to that effect will be entered accordingly.

*Benjamin W. Grim, Richard W. Jennings,* for petitioners.

*John B. Brennan, City Solicitor of City of Cranston,* for respondent.